Gerald O'HERN, Plaintiff,

v.

DELTA AIRLINES, INC., Defendant.

No. 93 C 5642.

United States District Court,
N.D. Illinois, E.D.

Nov. 19, 1993.

Patrick J. Kenneally, Patrick J. Kenneally, Ltd., Chicago, IL, for plaintiff.

Martin A. Kanofsky, Linda J. Schneider, Merlo, Chapello & Douglas, Chicago, IL, for defendant.

### MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the defendant's motion is denied.

### BACKGROUND

The plaintiff, Gerald R. O'Hern ("O'Hern"), filed a one count complaint against the defendant, Delta Airlines, Inc. ("Delta"), seeking compensatory damages for injuries he allegedly sustained during an April 19, 1985 Delta flight from Chicago O'Hare International Airport to Memphis, Tennessee. O'Hern claims that as a direct and proximate result of the negligent acts or

omissions[1] of Delta O'Hern sustained "severe and permanent hearing loss" when the defendant, through its agents, allowed the airplane to ascend too rapidly.

In the motion presently before this Court, Delta moves to dismiss the Complaint on preemption grounds. Delta states that all of the claims in the plaintiff's Complaint are based upon common law theories of negligence and that pursuant to the Federal Aviation Act, 49 U.S.C. App. § 1305 ("§ 1305"), these claims are preempted. Accordingly, Delta maintains that O'Hern has failed to state a claim upon which relief can be granted. O'Hern, however, contests Delta's motion, arguing that § 1305 does not preempt his personal injury claims. Before we consider the merits of the defendant's motion, we first examine the principles that guide our determination under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted since, in ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Ed Miniat, Inc. v. Globe Life Ins. Group Inc.*, 805 F.2d 732, 733 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Doe on Behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411 (7th Cir.1986). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988). We turn to the motion before us with these principles in mind.

## DISCUSSION

Delta maintains that the by enacting § 1305 of the Federal Aviation Act ("the Act") Congress expressly preempted state law claims such as the plaintiff's. Section 1305 of the Act provides in relevant part:

§ 1305. Federal preemption

(a) Preemption

(1) ... no State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under Title IV of this chapter to provide air transportation.

49 U.S.C.App. § 1305(a)(1). Delta argues that the state common law theories of negligence upon which O'Hern asserts his claim relate to "services" provided by the airlines and are therefore preempted by § 1305.

O'Hern, on the other hand, argues that the Act does not preempt his state personal injury claims since "safety" is not expressly included within the language of § 1305. According to O'Hern, since matters concerning safety are beyond the reach of § 1305, the "savings clause" provision of § 1506 of the Act preserves his claim. The savings clause provides:

Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but

---

1. O'Hern claims that Delta is guilty of one or more of the following negligent acts or omissions: carelessly operating, maintaining, and/or controlling the aircraft; failing to take reasonably safe precautions to see that the aircraft was not flown under dangerous operating conditions; negligent hiring; failing to properly train, educate advise or supervise its agents; failing to warn passengers of dangerous and hazardous conditions; and ascending the aircraft at too rapid a speed.

the provisions of this chapter are in addition to such remedies.

49 U.S.C.A. § 1506.

■ Evidently, the substance of the parties dispute over the preemptive scope of § 1305 is the interpretation of the phrase "relating to rates, routes, or services." If indeed § 1305 of the Act either implicitly or expressly preempts O'Hern's claims, then the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2., dictates that this action must be dismissed. It is well established that federal preemption may either be expressed or implied:

> [preemption] "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." (citations omitted). Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is " 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it'," (citations omitted), and conflict pre-emption, where "compliance with both federal and state regulations is a physical impossibility," (citation omitted), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (citations omitted).

*Gade v. National Solid Wastes Management Assn,* — U.S. —, —, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992).

The U.S. Supreme Court has recently addressed the preemptive scope of § 1305 of the Act. *Morales v. Trans World Airlines, Inc.,* — U.S. —, —, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). In *Morales* the Court adopted a broad interpretation of the phrase "relating to," stating that "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted under 49 U.S.C.App. § 1305(a)(1)." Under this construction, the Court held that the Act preempted the enforcement of fare advertising guidelines through a state's general consumer protection laws. *Id.* at — — —, 112 S.Ct. at 2036–41. The Court reasoned that price ad-

vertising clearly "relat[ed] to rates, routes or services." *Id.* at —, 112 S.Ct. at 2039. The Court, however, cautioned against preemption in "borderline" cases and in more attenuated matters:

> In concluding that the ... fare advertising guidelines are pre-empted, we do not, ... set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising ... would similarly "relat[e] to" rates; the connection would obviously be far more tenuous. To adapt to this case our language in *Shaw,* "some state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner" to have pre-emptive effect. 463 U.S. [85] at 100, n. 21 [103 S.Ct. 2890, 2901, n. 21, 77 L.Ed.2d 490]. In this case, as in *Shaw,* "[t]he present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line." *Ibid.*

*Morales,* — U.S. at —, 112 S.Ct. at 2040.

Unlike the claims in *Morales,* O'Hern's allegations have nothing to do with fare advertising or rates. Delta, however, would have us hold that under the Supreme Court's broad construction of the phrase "relating to" that the plaintiff's personal injury claim is preempted. Essentially, Delta claims that the plaintiff's state law negligence claims are impliedly preempted by § 1305 of the Act since they relate to "services." We do not agree with such a broad construction of § 1305 of the Act. Although *Morales* holds that the phrase "relating to" is to be given a broad interpretation, the Court in *Morales* did not address the breadth of the term "services." Delta is now asking us to find that "services" impliedly encompasses matters concerning "safety."

■ The Supreme Court has indicated that implied preemption is generally not applicable to a federal statute that contains an express preemption provision. *Cipollone v. Liggett Group, Inc.,* — U.S. —, —, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992). The Court in *Cipollone* stated that the "en-

actment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not preempted." *Id.* Nowhere in the language of § 1305 is there any mention of safety; nor is there any indication that Congress intended the term to encompass airline safety. Accordingly, since Congress omitted "safety" from the language of § 1305, we find that a state law action for personal injuries sustained as a result of an airline's alleged negligence does not have "a connection with or reference to airline 'rates, routes or services'." *Morales,* — U.S. at —, 112 S.Ct. at 2037.

Our decision is far from unprecedented. In applying the dictates of *Morales* and *Cipollone* courts have been reluctant to extend the reach of § 1305 to preclude state law tort recovery. For instance, in *Cleveland v. Piper Aircraft Corp.,* 985 F.2d 1438 (10th Cir. 1993), *cert. denied* — U.S. —, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993), the Tenth Circuit held that state law negligence claims against an aircraft manufacturer were not preempted by the Act. There, the court noted that the Act does not contain a specific preemption section relating to airplane "safety." *Id.* at 1443, n. 11. Citing to *Morales* for support, the court in *Cleveland* concluded that Congress did not intend to occupy the field of airplane safety to the exclusion of the state common law:

> Since Congress has not enacted an express preemption clause governing airplane safety, *Morales* supports our conclusion that the savings clause demonstrates the Federal Aviation Act does not preempt state common law. (footnote omitted)

*Id.* at 1143. Furthermore, the court observed that allowing an air carrier to be sued on common law tort theories would not conflict with the goals of the Act: "[t]here is nothing inconsistent with Congress's goal of maximum safety and common law claims." *Id.* Rather, the court observed that "through the savings clause ... Congress has intended to allow state common law to stand side by side with the system of federal regulations it has developed." *Id.* at 1444. Thus, the court concluded that even a broad reading of the phrase "relating to rates, routes, or services" would not encompass the safety regulations at issue. *Id.* at 1444, n. 13.

Likewise, the Eleventh Circuit in *Public Health Trust v. Lake Aircraft, Inc.,* 992 F.2d 291 (11th Cir.1993) held that the Act did not preempt an injured passenger's products liability claim. In failing to find either field preemption or conflict preemption, the court concluded that design defect claims were not related to airline "rates, routes or services." *Id.* at 295.

The defendant relies heavily upon Fifth Circuit cases in support of its assertion that O'Hern's negligence claims are preempted. *See, e.g., O'Carroll v. American Airlines, Inc.,* 863 F.2d 11 (5th Cir.1989), *cert. denied* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *Howard v. Northwest Airlines, Inc.,* 793 F.Supp. 129 (S.D.Tex.1992). These cases, however, were decided prior to *Morales* and *Cipollone.* Our reading of these Fifth Circuit cases does not persuade us that a different result is mandated.

Finally, we note that we are not aware of any Seventh Circuit case which is adverse to our decision. In *Bieneman v. Chicago,* 864 F.2d 463 (7th Cir.1988), *cert. denied* 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989), the Seventh Circuit held that the Act did not preempt state tort law claims. Analogizing the area of aviation to that of nuclear safety, the court in *Bieneman* found that the plaintiff's damages claims in an airport nuisance case were not preempted:

> ... federal law occupies the field of nuclear safety regulation. Notwithstanding the argument (indeed the truism) that an award of hefty compensatory and punitive damages is a method of regulating safety, the [Supreme] Court [has] concluded that federal law does not preempt common law remedies concerning nuclear safety....
> If no preemption is the conclusion notwithstanding the absence from nuclear safety legislation of a statute such as § 1106, it must be the appropriate treatment of air travel as well.

*Id.* at 472.

█ Thus, despite the Court's broad construction of the phrase "relating to" in *Morales,* we find no merit in the Delta's claim

that O'Hern's state law negligence claims are preempted by § 1305 of the Federal Aviation Act. Accordingly, Defendant's Motion to Dismiss is denied.

## CONCLUSION

For the forgoing reasons, we find that the plaintiff's state law claims are not preempted by the Federal Aviation Act. Defendant's Motion to Dismiss is therefore denied.